THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE __LRCiv P 5.4__
(Rule Number/Section)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| | ✓ FILED          LODGED |
| | ___ RECEIVED   ___ COPY |
| | JUL 0 3 2017 |
| | CLERK U S DISTRICT COURT |
| | DISTRICT OF ARIZONA |
| | BY_____ DEPUTY |

MATTHEW JAMES GRIFFIN,

Plaintiff,

Case No.   CV-17-02144-PHX-GMS-DKD

Jury Trial Demanded

VS.

CoreCivic, a
Maryland Corporation;
Correctional Officer Romero;
Ben Griego; Patti Sells;
Misty Olsen, and; Unknown
Does 1 through 17, employees
of CoreCivic,

COMPLAINT
FOR NEGLIGENCE

Defendants.

I. Jurisdiction

1.  This civil action arises under the
statutory and common law of the State of Arizona.

1

2.   This Court has jurisdiction under 28 U.S.C. Section 1332(a)(1) as there exists a complete diversity of citizenship between Plaintiff, a citizen of New Mexico and all Named Defendants who are citizens of Arizona or a Maryland corporation and the amount in ~~of~~ controversey exceeds Seventy-Five-Thousand Dollars, exclusive of interest and costs.

3.   This cause of action arose within Eloy, Arizona.

## II. Parties

4.   Plaintiff Matthew James Griffin, is a prisoner of the State of New Mexico who is presently confined within Alexander County, North Carolina. Plaintiff's legal domicile is and was, at all times material hereto, New Mexico

5.   Defendant CoreCivic is a

2

corporation that is incorporated under the laws of Maryland. CoreCivic's headquarters and principal place of business is within the State of Tennessee. Defendant CoreCivic is principally engaged in the business of operating penal institutions for local, state and federal governmental entities. Defendant CoreCivic was previously known as the Corrections Corporation of America (CCA) prior to changing its name in 2017.

6. Defendant Correctional Officer Romero (hereinafter "Defendant Romero") is also known herein as Unknown Doe #13 and was at all times material hereto an employee of Defendant CoreCivic at the Saguaro Correctional Center (SCC) in Eloy, Arizona

7. Defendant Ben Griego (hereinafter "Defendant Griego) was at all times material hereto an employee of CoreCivic employed at the Saguaro Correctional Center (SCC) as an Assistant Warden.

8. Defendant Patti Sells (hereinafter "Defendant Sells") was at all times material hereto employed as a Health Services Administrator (HSA) of Defendant CoreCivic at the Saguaro Correctional Center. (SCC)

9. Defendant Misty Olsen (hereinafter "Defendant Olsen") was at all times material hereto employed as a Unit Manager of Defendant CoreCivic at the Saguaro Correctional Center (SCC).

10. Defendant Unknown Does 1 through 17 were at all times material hereto employees of Defendant CoreCivic at the Saguaro Correctional Center (SCC).

## III.   Facts

11. Plaintiff, Matthew James Griffin, was at all times material hereto ~~confined~~ a prisoner of the State of New Mexico who was confined at the Saguaro Correctional Center (SCC) in Eloy, Arizona,

4

pursuant to the Western Interstate Corrections Compact, NMSA 31-5-4 (transfer to the custody of Hawaii) and re-transfer to SCC at Eloy, Arizona under Hawaii Revised Statutes 353-16.2. Plaintiff is and was at all times material hereto a citizen of New Mexico. Before his arrest and at the time of his imprisonment in 1989, Plaintiff resided in New Mexico. Upon his release from his current term of imprisonment Plaintiff must serve parole in New Mexico. Plaintiff intends to reside in New Mexico upon release. Plaintiff's legal domicile is and was at all times material hereto New Mexico.

12. Plaintiff is a handicapped/disabled prisoner of the State of New Mexico. Plaintiff has been diagnosed with a serious vision impairment, strabismus with exotropia, by Medical Doctors who are Board Certified Opthandogists in New Mexico, California, and North Carolina and an optometrist in Arizona.

5

13. Strabismus with exotropia causes Plaintiff to suffer double vision, uncontrolled eye-movement, a reduction in visual field, eye fatigue, involuntary Nystagmus and Plaintiff has no depth perception. All of which interferre with the major life activities of working, driving, ambulating over uneven terrain or stairs, seeing and correctly perceiving one's surroundings, and reading, concentrating and performing manual tasks safely especially those involving eye-hand coordination.

14. Plaintiff is disabled/handicapped within the meaning of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

15. Plaintiff arrived at the Saguaro Correctional Center (SCC) in Eloy, Arizona on November 13, 2014. SCC is owned and operated by Defendant CoreCivic.

16. Prior to arriving at SCC Plaintiff

was incarcerated within the California Department of Corrections and Rehabilitation (CDCR) from August 10, 2008 through November 12, 2014 under the Western Interstate Corrections Compact. Plaintiff's California ADA Comprehensive Accommodation Chrono, CDCR-Form 7410 is attached hereto as Exhibit #1.

17. Between November 13, 2014 and June 11, 2015, Plaintiff filed several written complaints/grievances alleging that he was not receiving reasonable accommodation under the Americans With Disabilities Act, while at SCC.

18. From November 13, 2014 through June 14, 2015, Plaintiff was confined at SCC in an ADA compliant handicapped cell with handrails.

19. On June 12, 2015, Defendants Griego and Olsen approached Plaintiff's handicapped cell N-C-17, while talking. Defendant Olsen asked, "What do you want to do with

this one?" Defendant Griego replied,
"Is he still complaining?" Defendant Olsen
responded, "He always has a complaint."
Defendant Griego stated, "Move him in front
of the wall, let him complain about that."

20. At SCC most cells look out on
to the main floor of the Cell Block or Section,
except for the last cell on the upper and
lower tiers which are accessed through a
short corridor. These last or end cells
look directly at a wall approximately 4½
to 5 feet away from the cell's front (door)
window. The rear (outside) window of these
cells has been spray painted white. At SCC
"putting someone in front of the wall" refers
to placing them in one of the last or end
cells of the section None of which are
ADA compliant cells or contain handrails.

21. On June 15, 2015 Plaintiff was transferred
from an ADA cell to a NoN-ADA cell without
handrails and that was "in front of the wall"

8

22. Plaintiff was able to have his new NON-handicapped/ADA cell condemned by arguing that water leaking on to the floor of the cell created a falling hazardous for the vision impaired Plaintiff.

23. Defendant Griego had Plaintiff moved to an upstairs NON-ADA cell. Stairs are especially hazardous to Plaintiff. See, Exhibit #1 "No height over 2 feet" and "avoid uneven terrain."

24. Plaintiff's eye condition and vision impairment has not changed from 2008 to date (29 JUNE 2017).

25. Plaintiff is so severely disabled that North Carolina prison officials have not only assigned Plaintiff to handicapped housing but they also require Plaintiff to walk with and have the assistance of a medical orderly and they prohibit Plaintiff from climbing which they define as meaning "No stairs whatsoever." See, Exhibit #2 N.C. Medical Duty Status.

26.   On June 24, 2015, Plaintiff was transferred to a downstairs NON-ADA cell that was "in front of the wall."

27.   On June 30, 2015 Plaintiff was transferred to a different Cell Block/Section and was assigned a non-handicapped/ADA cell that was "in front of the wall" with the back window painted over. Plaintiff remained in that cell (N-E-6) until he left SCC for North Carolina on October 07, 2015.

28.   On July 03, 2015, Plaintiff was housed in cell N-E-6, November Unit (a segregation unit), Section E, Cell #6 (a cell "in front of the wall."). Cell N-E-6 is a downstairs, NON-handicapped/ADA cell without handrails.

29.   From November 13, 2014 through October 07, 2015, Defendant CoreCivic formerly known as the Corrections Corporation

10

of America owned and operated the
Saganro Correctional Center in Eloy, Arizona

30.  The floors in E-Section of November
Unit and Cell N-E-6 are made of concrete
which had at the time been covered with
some type of clear sealant and/or wax.
These Floors are extremely slippery when
they have standing or flowing water
upon them.

31.  On July 03, 2015, at approximately
2000 to 2100 hours Flooding began from
the top tier in November Unit, E-Section.
Water spilled off the top tier and
came to rest upon the main Floor in
E-Section.  At this time no water
entered or approached Plaintiff's cell
N-E-6 which was the last cell
all the way in the back of the
short corridor

32.  Defendant CoreCivic operated
SCC with three (3) shifts of

11

employees in 2015:

    a)  Day Shift
    b)  Afternoon/Evening Shift, and a
    c)  Grave-yard Shift

33.  The Flooding occurred on the Afternoon/Evening Shift and was known to Defendants Unknown Does 1 through 12 who were correctional officers assigned to November Unit on the Evening of July 03, 2015 and/or supervisory correctional personnel responsible for supervising the officers assigned to November Unit.

34.  Upon information and belief, Defendant CoreCivic had in place rules and regulations on July 03, 2015 that prohibit its employees from leaving or abandoning their assigned post at the scheduled end of their shift when a safety hazard or ongoing emergency exists at their assigned location within the prison.

35.  A reasonably prudent person would

12

know that flooding creates a hazardous situation which can endanger both staff and prisoners

36. Nevertheless, Defendants Unknown Does #1 through 12 left or abandoned their assigned posts at SCC on the evening of July 03, 2015 when they knew of the ongoing flooding, free standing water and the safety hazardous it presented.

37. All of the Defendants are or were employed by Defendant CoreCivic and received safety training including, but not limited to, the safety training relating to slip and fall hazards within the work place.

38. Late on the evening of July 03, 2015 and early in the morning of July 04, 2015 Defendants Romero and Unknown Does #13 through 17 began cleaning and

removing free standing water from
E-Section and/or supervised the same.

39. Defendant Romero and some or
all of Defendants Doe 13 through 17 used
squeegee brooms to move the free
standing water or supervise the same.
These Defendants negligently pushed water
past the unit drains, down the short
corridor and into Plaintiff's cell

40. The vision impaired Plaintiff did
not realize that his cell now had
water on the floor until he slipped.
Plaintiff reached for a handrail reflexively,
a handrail that was not there as cell
N-E-6 is a non-handicapped cell.
Plaintiff continued to fall striking
the wet concrete and injuring his lower
back and aggravating his sciatica (pre-
existing sciatic nerve pain).

41. Plaintiff reported his fall and
injury to Defendants Romero and Does

14

13 through 16 and requested to be removed from his cell for medical care and so that staff could remove the water from the floor of his cell. These Defendants informed Plaintiff that due to his security level and special precautions that he could not be removed until a supervisory was present.

42. Defendants Romero and Unknown Does 13 through 17 had also pushed or supervised the pushing of water into cell N-E-8, the cell next door to Plaintiff's, a double occupancy cell. The prisoners in N-E-8 did not have special security precautions. These Defendants attempted to remove the prisoners from N-E-8 to clear the water from their cell. After the first prisoner was handcuffed, Plaintiff heard him yell followed by a splash. Defendant Romero (Doe #13) then stated to the other prisoner "try to help him up." Next Plaintiff heard two splashes.

15

43.   Plaintiff's investigation later revealed that both prisoners in N-E-8 had fallen to the ground. One fell twice while wearing Defendant Romero's (Doe #13) wrist restraints (handcuff's). The second prisoner fell attempting to assist the first back to his feet. The second prisoner sustained a laceration to his foot from the wrist restraints worn by the first.

44.   The prisoners in N-E-8 were eventually evacuated from their cell, and their cell was cleared of standing water. They were returned to their cell

45.   At this time none of the three (3) prisoners, including Plaintiff, who had fallen were provided with medical care by Defendants Romero and Unknown Does 13 through 17.

46.   At approximately 0115 to 0145 on July 04, 2015 Plaintiff spoke with

16

Captain Ramirez who was making his rounds in November Unit, E-section. Initially Ramirez disputed that anyone had fallen and asserted that his officers are trained to document injuries to inmates. Plaintiff pointed out that not only did 3 prisoners fall on the slippery ~~floor~~ floor, but that one of them in N-E-8 was actually wearing an officers handcuffs when he fell and that none of us had seen medical.

47. Captain Ramirez summoned the officer Defendant Romero (Doe #13) and asked him if anyone fell while wearing wrist restraints. Defendant Romero (Doe #13) admitted that they had. Captain Ramirez ordered Plaintiff and the two other prisoners transported to medical for treatment.

48. Plaintiff was evaluated and treated at SCC Medical at approximately 0300 hours on July 04, 2015. Medical Staff

were very confrontational and refused to record Plaintiff's complaints verbatim. Plaintiff was given an over the counter pain medicine.

49. Plaintiff was returned to his cell.

50. Plaintiff still injured and in terrible pain wrote out a ~~sick call~~ Medical request (Medical Request) and turned it in on the evening of July 04, 2015. Plaintiff requested treatment for his injuries and to see the doctor.

51. Defendant Sells, in writing, denied Plaintiff's request for treatment and to see the doctor.

52. Plaintiff's injuries remained untreated. On October 07, 2015 Plaintiff transfered away from SCC

53. Plaintiff continues to suffer lower back pain and increased sciatic nerve pain from his July 04, 2015 Fall.

18

## COUNT ONE:
## NEGLIGENCE

54. Paragraphs 1 through 53 are incorporated by reference as if the same were fully set forth herein.

55. Defendants Romero, Griego, Sells, Olsen and Unknown Does 1 through 17 had a duty to use ordinary care in the operation and maintenance of the Saguaro Correctional Center.

56. A reasonably prudent employee of a penal institution would not have left or abandoned their post while Flowing or Free standing water Flooding was present at their assigned post. On July 03, 2015 Defendants Unknown Does 1 through 17 Failed to act in a reasonably prudent manner when they left or abandoned their posts with Free Flowing or Free standing Flooding at their assigned posts knowing that this Flooding created a safety hazardous and that the

oncoming replacement shift was less
able to deal with such emergencies because
the oncoming shift was the least
populace of the 3 Facility shifts.

57.    A reasonably prudent employee
of a penal institution would not have
removed the handicapped Plaintiff From
a handicapped cell because the Plaintiff
had been complaining and been complaining
about not receiving his Full ~~next~~ measure
of reasonable accommodations under the
ADA.    Defendants Griego and Olsen
Failed to act in a reasonably ~~not~~ prudent
manner when they assigned Plaintiff to
a NON-handicapped cell without handrails
because he had been complaining and
complaining about not receiving his Full
measure of ADA reasonable accommodations.

58.    A reasonably prudent employee of
a penal institution would not have
pushed water From Flooding past the unit
drains, down the short corridor and under

the Plaintiff's cell door. Defendants Romero and Unknown Does #13 through 17 failed to act in a reasonably prudent manner on July 04, 2015 when they pushed water with squeegee brooms past the unit drains, down the short corridor and under Plaintiff's cell door all the while knowing that water upon sealed and/or waxed concrete created a ~~x~~ slip and fall hazard.

59. ~~58.~~ A reasonably prudent employee of a penal institution would refer a prisoner complaining of injury from a slip and fall accident to a health care provider for evaluation, treatment and care. Defendant Sells failed to act in a reasonably ~~x~~ prudent manner when she denied Plaintiff's July 04, 2015 written request for medical treatment from injuries sustained in a slip and fall accident at SCC.

60.   Defendants Romero, Griego, Sells,
Olsen and Unknown Does 1 through 17
breached their duty to use ordinary care
in the operation and maintenance of the
Saguaro Correctional Center when they
negligently committed the acts and omissions
described in paragraphs 56 through 59,
supra, which were the direct and proximate
cause of Plaintiff's injuries and harm.

61.   As a direct and proximate result
of the negligent acts and omissions of
Defendants Romero, Griego, Sells, Olsen and
Unknown Does #1 through 17 Plaintiff
suffered the following injuries or harm:
Physical injury; lower back pain; increased
sciatic nerve pain; painful physical therapy
in 2016 and 2017; severe to moderately
severe pain and suffering, and; harm associated
with the delay in commencing treatment of
Plaintiff's injuries.

62.   The negligence of Defendants
Romero, Griego, Olsen, Sells and Unknown

22

Does #1 through 17 was the direct and proximate cause of injury and harm to Plaintiff.

## COUNT TWO:
## Respondeat Superior Liability of Defendant CoreCivic

63. Paragraphs 1 through 62 are incorporated by reference as if the same were fully set forth herein.

64. Defendants Romero, Griego, Sells, Olsen and Unknown Doe's #1 through 17 were, at all times material hereto, employees of Defendant CoreCivic.

65. Defendant CoreCivic is liable for the negligence of its employees or agents.

66. Plaintiff's injuries were caused by the negligence of Defendant CoreCivic's employees as described herein.

23

Request For Relief

WHEREFORE, Plaintiff prays for judgment against Defendants for general and compensatory damages in the amount of $109,500.00 Dollars, exclusive of interest and costs, plus continuing damages; an award of attorney fees, if Plaintiff is represented by an attorney; an award of taxable costs, and; any and all such further relief as this Court deems just and proper.

Dated this 29 day of June, 2017

MATTHEW JAMES GRIFFIN
1481522
633 Old Landfill Road
Taylorsville, NC 28681
828-632-1331

# Verification

I, Matthew James Griffin, hereby declare under penalty of perjury of the laws of the United States of America, that:

1. I am the Plaintiff in this civil action.

2. I have recd the Foregoing Complaint for Negligence and know its contents to be true and correct, except to matters alleged upon information and belief which I believe to be true. 28 USC Section 1746

Executed at the AXCI within Alexander County, North Carolina on this __29__ day of June, 2017.

MATTHEW JAMES GRIFFIN

25

# EXHIBIT
# NUMBER ___1___

STATE OF CALIFORNIA

ADA Comprehensive Accommodation Chrono

of GRIFFIN — G28194

dated 03MAR2014

This Exhibit is comprised of ___1___ page and is a legal document or material within the meaning of 15CCR3161.

STATE OF CALIFORNIA
**COMPREHENSIVE ACCOMMODATION CHRONO**
CDCR 7410 (REV. 05/13)                                       DEPARTMENT OF CORRECTIONS AND REHABILITATION

*3-13-14*                                                           Page 1 of 1

**INSTRUCTIONS:** A physician shall complete this form if a patient-inmate requires an accommodation due to a medical condition. Check P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, enter the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

| | | | | |
|---|---|---|---|---|
| None ☐ | | | Bottom Bunk | ☒P ☐T _____ |
| Barrier Free/Wheelchair Access | ☐P ☐T _____ | | Single Cell-see 128-C date: _____ | ☐P ☐T _____ |
| Ground Floor Cell | ☒P ☐T _____ | | Permanent ☐OHU ☐CTC | ☐P ☐T _____ |
| Continuous Powered Generator | ☐P ☐T _____ | | Other *eye patch* | ☒P ☐T _____ |

### B. MEDICAL EQUIPMENT/SUPPLIES

| | | | | |
|---|---|---|---|---|
| None ☒ | | | Wheelchair: (type) _____ | ☐P ☐T _____ |
| Limb Prosthesis | ☐P ☐T _____ | | Contact Lenses & Supplies | ☐P ☐T _____ |
| Brace | ☐P ☐T _____ | | Hearing Aid | ☐P ☐T _____ |
| Crutches | ☐P ☐T _____ | | Special Garment: | |
| Cane: (type) _____ | ☐P ☐T _____ | | (specify) _____ | ☐P ☐T _____ |
| Walker | ☐P ☐T _____ | | Rx. Glasses: _____ | ☐P ☐T _____ |
| Dressing/Catheter/Colostomy Supplies | ☐P ☐T _____ | | Cotton Bedding | ☐P ☐T _____ |
| Shoe: (specify) _____ | ☐P ☐T _____ | | Extra Mattress | ☐P ☐T _____ |
| Dialysis Peritoneal | ☐P ☐T _____ | | Other | ☐P ☐T _____ |

### C. OTHER

| | | | | |
|---|---|---|---|---|
| None ☒ | | | Therapeutic Diet: (specify) | ☐P ☐T _____ |
| Attendant to assist with meal access and other movement inside the institution | ☐P ☐T _____ | | Communication Assistance | ☐P ☐T _____ |
| Attendant will not feed or lift the patient-inmate or perform elements of personal hygiene | | | Transport Vehicle with Lift | ☐P ☐T _____ |
| | | | Short Beard | ☐P ☐T _____ |
| Wheelchair Accessible Table | ☐P ☐T _____ | | Other | ☐P ☐T _____ |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments? ☒Yes ☐No   If yes, specify:
No Driving  No working around hazardous machinery  No height over 2 feet  No work around hot object or sharp objects
Avoid uneven terrain

Institution: _CSP/COR_        R. Gill, D.O.                     Title: _____
                              Completed by R. Gill
                              MAR 0 3 2014

Signature : _____                              Date: _____
                                                   mm/dd/yy
CME Signature: _O. Beregasneyts, Jr_  Date: 3/6/14  ☒ Approved  ☐ Denied
                                                   mm/dd/yy

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions | CDCR #: G28194 |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information | Last Name: Griffin |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | First Name: Matthew  MI: |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached ☐ Reached | DOB: 7/25/1963 |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes | |
| 4. Comments: | | | |

Distribution: Original - eUHR; Copy to Central File, Correctional Counselor, and Inmate

4A 2L-30L

NIS

# EXHIBIT
# NUMBER 2

North Carolina
Department of Public Safety
Medical Duty Status
of GRIFFIN #1481522
dated 28 OCT 2016

This Exhibit is comprised of ___1___ page and is a legal document or material within the meaning of 15CCR3161.

FORM J-29

# North Carolina Department of Public Safety
## Medical Duty Status

| Off #:  1481522 | Offender Name:  GRIFFIN, MATTHEW J |
|---|---|

| | Exp. Date: |
|---|---|
| ___ No Work | Exp. Date: _____ |
| ___ Bed Rest | Exp. Date: _____ |

**Housing Restriction:**

| Restriction | Expiration Date |
|---|---|
| Bottom Bunk | |
| Handicapped Cell | 07/11/2017 |

**Physical Limitation Restriction:**

| Restriction | Expiration Date |
|---|---|
| No Climbing | 07/11/2017 |
| Falls Prevention | 07/11/2017 |
| Orderly Assistance | 07/11/2017 |

**May Have / Follow up / Equipment Issue / Needs Assessment:**

| Equipment | Start Date | End Date | Return Date |
|---|---|---|---|
| Prosthethic Device | 01/11/2016 | | |
| eye patch | | | |
| Thermal Underwear Issue | 11/02/2015 | 07/11/2017 | |
| Non-Wool Blanket | 11/02/2015 | 07/11/2017 | |
| x tra blanket | | | |
| Eye Glasses | 10/09/2015 | | |

**Comments:** PLEASE NOTE: no climbing means no stairs whatsoever; no working around hazardous machinery, no height over two feet , no work around hot object or sharp objects avoid uneven terrain, no driving 10/28/16 to 10/27/2017 per M. Kalinski, MD- wrist restraints in front with waist chains due to shoulder dysfunction

Please allow patient to have Exercise time at the GYM 3 times a week x 12 months

|  | 10/28/2016 |
|---|---|
|  | Date |

| Offender Name: **GRIFFIN, MATTHEW J** | Off #: **1481522** | Quarters: **NPODD** |
|---|---|---|

*ALL EXPIRATION DATES ARE AT 24:00*